UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK WIGHTMAN, D.D.S., ET AL. | CIVIL ACTION |
| VERSUS | NO: 19-11628 |
| AMERITAS LIFE INSURANCE CORP. AND DENTEMAX, L.L.C. | SECTION: "J"(3) |

## ORDER & REASONS

Before the Court are two *Motions to Dismiss* (**Rec. Docs. 91, 92)** filed by Defendants DenteMax, L.L.C. ("DenteMax") and Ameritas Life Insurance Corp. ("Ameritas"). In these motions, DenteMax and Ameritas argue that Plaintiffs' claims are prescribed. In addition, DenteMax argues that Plaintiff failed to state a claim for breach of contract. These motions to dismiss are opposed by Plaintiffs (Rec. Docs. 95, 96). The Court notified the parties that it might treat these motions to dismiss as motions for partial summary judgment in order to consider evidence that is external to the pleadings.

In addition, Ameritas subsequently filed a separate *Motion for Partial Summary Judgment* **(Rec. Doc. 114)** regarding Plaintiffs' claim for unjust enrichment and request for injunctive relief. This motion for partial summary judgment is opposed by Plaintiffs. (Rec. Doc. 119).

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are dentists who operate a family dentistry, Wightman Family Dental, L.L.C., in St. Bernard Parish. At some point prior to 2012, Plaintiffs entered into a preferred provider organization ("PPO") agreement with DenteMax. A PPO is defined as a "contractual agreement or agreements between a provider or providers and a group purchaser or

1

purchasers to provide for alternative rates of payment specified in advance for a defined period of time in which the provider agrees to accept these alternative rates of payment offered by the group purchasers to their members whenever a member chooses to use its services." La. R.S. 40:2202(5)(a). Plaintiffs' stated goal in entering the PPO was to expand their client base via access to DenteMax's network.

On May 1, 2012, Ameritas leased the DenteMax PPO network, which granted Ameritas access to the reduced PPO reimbursement rate that Plaintiffs had provided to DenteMax. Plaintiffs were not notified of this arrangement, nor were Ameritas's benefit cards updated to reflect this change. Thus, when Ameritas's insureds presented their benefit cards to Plaintiffs, Plaintiffs believed they would be reimbursed at their standard rate.[1]

Upon discovering Ameritas intended to reimburse them at a reduced rate, Plaintiffs contacted Ameritas and learned about the leasing arrangement between Ameritas and DenteMax. After Ameritas and DenteMax denied Plaintiffs' request to reimburse Plaintiffs at Plaintiffs' standard rate, Plaintiffs initiated the present suit. The gravamen of Plaintiffs complaint is Defendants' purported violation of La. R.S. 40:2203.1, which requires insurers to notify health care providers when reimbursing those providers at a reduced PPO rate.

Ameritas moved to dismiss on two grounds: (1) Plaintiffs had failed to allege any contractual privity between itself and Ameritas and therefore Ameritas was not a group purchaser; and (2) the statute only applied to "healthcare providers" and dentists are not healthcare providers. DenteMax moved to dismiss on two grounds as well: (1) DenteMax was exempt from the provisions of the statute based on certain exemption language contained therein; and (2) dentists were not healthcare providers.

---

[1] The standard rate is the rate Ameritas's benefit cards advertised, which was the rate Plaintiffs used for patients insured by Ameritas before Ameritas entered into the leasing arrangement with DenteMax.

In its earlier Order and Reasons, the Court determined that dentists were healthcare providers within the meaning of the statute. The Court also determined the exemption provision found in La. R.S. 40:2203.1(A) did not apply to DenteMax. The Court also found that Plaintiffs had failed to allege contractual privity between themselves and Ameritas. Therefore, Ameritas could not be a "group purchaser" under the clear language of La. R.S. 40:2202(3). (Rec. Doc. 37).[2]

After the Court's ruling, Plaintiffs proceeded to convert the case into a putative class action in their first supplemental and amended complaint. Nearly six months later, Plaintiffs filed their second supplemental and amended complaint, which led to DenteMax and Ameritas filing the present motions to dismiss. After the Court decided that it might consider exhibits attached to DenteMax's motion to dismiss, the Court notified the parties and gave the parties an opportunity to file supplemental memoranda and exhibits.

Oral argument was held on October 21, 2020. During oral arguments, the Court advised that it would only treat Defendants' motions to dismiss as motions partial summary judgment for the purposes of deciding Defendants' prescription arguments.

While Defendants' motions to dismiss were pending, Ameritas also filed a motion for partial summary judgment, seeking dismissal of Plaintiffs claims for unjust enrichment and request for injunctive relief.

## **LEGAL STANDARD**

When determining an issue of Louisiana law, the Court should first look to the decisions of the Louisiana Supreme Court. *Howe ex rel. Howe v. Scottsdale Ins. Co*, 204 F.3d 624, 627 (5th. Cir. 2000). Mindful of Louisiana's distinction between primary and secondary sources of law, the Court will begin its analysis with reliance on the Louisiana Constitution

---

[2] However, under a plain reading of La. R.S. 40:2203.1, Ameritas could be "deemed" a group purchaser "for purposes of this Section" under La. R.S. 40:2203.1(B)(4).

3

and statutes before looking to "'jurisprudence, doctrine, conventional usages, and equity, [which] may guide the court in reaching a decision in the absence of legislation and custom.'" *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004) (quoting LA. CIV. CODE art. 1 rev. cmt. (b)). If the Court must make an "Erie guess" on an issue of Louisiana law, the Court will decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* The Court is not strictly bound by the decisions of the state intermediate courts and may disregard them if the Court is "convinced that the Louisiana Supreme Court would decide otherwise." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

## DISCUSSION

### I. DEFENDANTS' PRESCRIPTION ARGUMENT

As a preliminary matter, Plaintiffs argue that Defendants' failure to raise the affirmative defense of prescription in their original answers and motions to dismiss was a waiver of the prescription defense under Rule 8(c). However, when a prescription defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal. *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983). In this case, both Defendants raised the prescription issue in their motions to dismiss, and Plaintiffs have filed memoranda in opposition to both of those motions, in which Plaintiffs specifically argue against the merits of Defendants' prescription arguments. Therefore, Plaintiffs have not been subjected to any prejudice or unfair surprise by Defendants' failure to comply with Rule 8(c).

On the merits of the prescription issue, both Defendants argue that statutory actions under La. R.S. 40:2203.1 are subject to a one-year prescriptive period, which has already passed. If claims under La. R.S. 40:2203.1 are delictual in nature, as Defendants argue, then

4

they are subject to the one-year prescriptive period for delictual actions; however, if such claims are contractual or quasi-contractual in nature, as Plaintiffs argue, then they are subject to the ten-year prescriptive period for personal actions. *See Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345-46 (5th Cir. 2009) ("While Richard's action is somewhat analogous to one for conversion, because Wal–Mart breached the general duty to refrain from procuring life insurance policies when it lacks an insurable interest, Richard's suit is more analogous to an action for unjust enrichment.").

In their oppositions, Plaintiffs argue that claims under 40:2203.1 are quasi-contractual in nature, citing *Gunderson v. F.A. Richard & Assocs.*, which is a Louisiana Third Circuit Court of Appeal decision that specifically addresses the PPO Act. 2009-1498 (La. App. 3 Cir. 6/30/10), 44 So. 3d 779, 784. In *Gunderson*, the Third Circuit held that claims for statutory damages and attorneys' fees for failure to comply with the statutory notice requirements under La. R.S. 40:2203.1(B) were personal in nature and therefore subject to a 10-year prescriptive period.

However, the Louisiana Supreme Court's more recent decision in *DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.* is incompatible with the Third Circuit's decision in *Gunderson*. *DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 2019-01496, 2020 WL 3867212 (La. July 9, 2020*)*. Plaintiffs argue that *DePhillips* does not apply to La. R.S. 40:2203.1 because the PPO Act is distinguishable from the Balance Billing Act at issue in that case. Contrary to Plaintiffs' argument, the *DePhillips* Court explicitly granted certiorari to resolve the circuit split between the First Circuit, which had decided to apply 1-year prescriptive periods to these sorts of statutory causes of action with no legislatively designated prescriptive period, and the Third Circuit, which had decided to apply 10-year prescriptive periods to such statutory causes of action, like in *Gunderson*. *Id.* at *2-3.

5

In *DePhillips*, the Louisiana Supreme Court held that claims based on the Balance Billing Act, La. R.S. 22:230.3, are delictual and not contractual in nature because "[p]rohibitions on a contracted healthcare provider regarding balance billing derive from the Act and did not exist before the enactment of the Act." *Id*. at *10. Likewise, the prohibitions in La. R.S. 40:2203.1 regarding the use of PPO discounts without providing notice did not exist before its enactment.

The *DePhillips* court also emphasized that the obligation not to balance bill is a general one created by law and is "a duty owed by all 'contracted health care providers' to all 'enrollees or insureds,' and is not specific to any individual." *Id*. at *7. Like the Balance Billing Act, the duties imposed by La. R.S. 40:2203.1 are owed by all "group purchasers" to all "providers," and like the Balance Billing Act, the notice requirement set forth in La. R.S. 40:2203.1 "is a general duty imposed by statute and, thus, does not arise from any special obligation owed by" Defendants to Plaintiffs. *Id*. For these reasons, the Court finds that *DePhillips* apples in this case and claims under La. R.S. 40:2203.1 are subject to a one-year prescriptive period.

This lawsuit was originally filed on July 11, 2019, thus any violations under La. R.S. 40:2203.1 that occurred before July 11, 2018 would be prescribed. (Rec. Doc. 1). However, when tortious conduct is ongoing and continues to cause damage, prescription does not run until the tortious conduct ceases. *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So. 2d 531, 533 (La. 1982). Since Plaintiffs' statutory claims under La. R.S. 40:2203.1 are delictual in nature, prescription has not accrued in the present case unless over one year has passed since Ameritas last reimbursed Plaintiffs at DenteMax's reduced PPO rate.

Initially, Plaintiffs alleged in their amended complaint that the "actions of Defendants are an ongoing breach and continued violation of La R.S. 40:2203.1." (Rec. Doc. 86., at ¶23). However, the Court noticed that DenteMax had attached exhibits to their motion to dismiss

6

demonstrating that Plaintiff had terminated its contract with DenteMax on February 29, 2016. (Rec. Docs. 92-3, 92-4). Since this information was highly relevant to whether Plaintiffs' claims were prescribed, the Court sent the parties notice that it might convert Defendants' motions to dismiss as motions for partial summary judgment and gave the parties the opportunity to file supplemental memoranda and exhibits.

After receiving the aforementioned notice from the Court, Plaintiffs agreed to a stipulation, conceding that any violations of LA. R.S. 40:2203.1 took place before January 1, 2017. (Rec. Docs. 128, 128-3). Accordingly, since Plaintiffs have admitted that they did not file suit until over 2 years had passed after Defendants had last allegedly violated La. R.S. 40:2203.1, Plaintiffs' claims under La. R.S. 40:2203.1 are prescribed.

## II.   DENTEMAX'S ARGUMENT AGAINST THE BREACH OF CONTRACT CLAIM

DenteMax also argues that Plaintiffs have failed to state a claim for breach of contract. According to DenteMax, Plaintiffs argue only that DenteMax failed to provide steerage, but the provision at issue, which DenteMax classifies as "permissive," does not strictly require steerage.[3]

"The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE art. 2047. "Contracts must be performed in good faith." LA. CIV. CODE 1983. Plaintiffs' contract with DenteMax's contract under "Responsibilities of DenteMax" states as follows: "DenteMax **shall** market its program to groups and individuals with the intent of obtaining Participants who **may become** patients of the Provider." (Rec. Doc. 11-2, at 2-3) (emphasis added). The word "**shall**" indicates that DenteMax was required to attempt to provide steerage to Plaintiffs. The word "**may**" indicates that DenteMax was not necessarily required

---

[3] Steerage occurs when an insurer actively encourages plan participants to seek the services of the providers in a PPO. *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 1002 n.43 (11th Cir. 2001).

7

to be successful in its efforts to provide patients. The word "**become**" indicates that DenteMax was required to attempt to steer **new** patients toward Plaintiffs because any pre-existing patients would not "become" new patients. In summary, DenteMax breached its contract if DenteMax did not make good faith efforts to steer groups and individuals to seek Plaintiffs' services, regardless of whether or not any such efforts were successful.

DenteMax argues that it did steer patients by leasing its reduced PPO rate to companies like Ameritas. However, this argument has two major flaws. First, if DenteMax only attempted to fulfill its obligation by leasing its reduced PPO rate to companies like Ameritas, whose insureds may have already been patients of Plaintiffs, then it is difficult to conclude that such an arrangement constitutes a good faith effort to steer patients. If such insureds were already patients of Plaintiffs, then Plaintiffs essentially would have contracted with DenteMax to be paid less to treat pre-existing patients. For this reason, the Court finds that DenteMax's obligation to perform in good faith requires factual inquiry into whether such a leasing arrangement could have resulted in new patients for Plaintiffs.

The second issue with DenteMax's argument is that the contract required DenteMax to market Plaintiffs' services to both "groups" **and** "individuals." Although the Court need not define which "individuals" DenteMax was required to market Plaintiffs' services to, it is clear that a company like Ameritas would fall under the "group" category. Since DenteMax has only argued that it marketed Plaintiffs' services to companies like Ameritas, it has not shown that it also fulfilled its obligation to market Plaintiffs' services to individuals.

For these reasons, the Court finds that Plaintiffs have stated sufficient facts to plausibly alleged a claim for breach of contract against DenteMax.

### III.  UNJUST ENRICHMENT

Ameritas argues that Plaintiffs had a remedy against DenteMax under La. R.S. 40:2203.1, which precludes Plaintiffs from bringing an unjust enrichment claim against Ameritas, despite the prescription of that claim against DenteMax.

A claimant is prohibited from bringing an unjust enrichment claim when an alternative remedy is available to the claimant. *Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So. 2d 648, 671, *on reh'g* (Nov. 3, 1997). "[A]gainst whom that remedy existed is immaterial." *Threadgill v. Orleans Par. Sch. Bd.*, No. CIV.A. 02-1122, 2013 WL 5560906, at *6 (E.D. La. Oct. 7, 2013); *see e.g.*, *Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So. 2d 648, 672-673, *on reh'g* (Nov. 3, 1997) (("The Carrieres had a remedy under the law for their impoverishment and that remedy was pursuing an action against the [third party] liable to them under the law for the rental payments.); *Williams v. Chesapeake Louisiana, Inc.*, 2013 WL 951251, *7 (W.D.La.2013) ("The Louisiana courts of appeals have also made clear that an unjust enrichment claim will not lie so long as the law provides a remedy for the enrichment against anyone, not only the defendant against whom the unjust enrichment claim is asserted.").

When a claimant would have an alternative remedy at law, but that remedy is prescribed, that prescription does not permit that claimant to bypass the prohibition on bringing an unjust enrichment claim when some other remedy was formerly available. *Walters v. MedSouth Record Mgmt., LLC*, 2010-0352 (La. 6/4/10), 38 So. 3d 241, 242 ("[W]e find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."). Indeed, allowing Plaintiffs to bring unjust enrichment claims due to the prescription of their alternative

9

remedy under La. R.S. 40:2203.1 would have the effect of allowing Plaintiffs to circumvent the prescriptive period of La. R.S. 40:2203.1. Thus, if Plaintiffs had a claim against DenteMax under La. R.S. 40:2203.1, then Plaintiffs cannot bring an unjust enrichment claim against Ameritas, despite the fact that any such claim against DenteMax is prescribed.

La. R.S. 40:2203.1 allows a healthcare provider to recover against a group purchaser that takes advantage of a reduced PPO reimbursement rate without providing notice to the healthcare provider. The Court has previously held that Plaintiffs, as dentists, are healthcare providers under the PPO Act. DenteMax is a group purchaser as defined in La. R.S. 40:2202(3) because it contracts with providers, such as Plaintiffs, in order to create PPOs. La. R.S. 40:2203.1(A) establishes an exemption for this notice requirement for a group purchaser that provides "health benefits through its own network or direct provider agreements or to such agreements of a group purchaser." Unlike Ameritas, which provides health benefits, this exemption does not apply to DenteMax because it leases health benefits to other companies instead of providing health benefits itself. *Gunderson*, 44 So. 3d at 787 (holding that companies that act as middlemen do not provide health benefits and are therefore not exempt under La. R.S. 40:2203.1(A)). Since DenteMax failed to provide notice to Plaintiffs that they would be reimbursed at the reduced PPO rate for treating patients insured by Ameritas, Plaintiffs had a remedy against DenteMax under La. R.S. 40:2203.1. Although said claim is now prescribed, the fact remains that an alternative remedy was available to Plaintiffs against DenteMax. Therefore, Plaintiffs cannot bring a claim against Ameritas for unjust enrichment, and Ameritas's motion for partial summary judgment on Plaintiffs' unjust enrichment claims should be granted.

## IV. INJUNCTIVE RELIEF

Ameritas also seeks summary judgment regarding Plaintiffs' request for injunctive relief. Preliminary injunctions require the moving party to show "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and permanent injunctions require "that a failure to grant the injunction will result in irreparable injury." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (internal citations omitted); *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016) (internal citations omitted). In this case, the parties have already stipulated that the conduct for which Plaintiffs seek injunctive relief from Defendants ceased before January 1, 2017. (Rec. Docs. 128, 128-3). Therefore, Plaintiffs cannot argue that they will suffer further injury if Ameritas's conduct is not enjoined because any such conduct has already ceased. For this reason, Ameritas's motion for partial summary judgment on Plaintiffs' request for injunctive release should be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motions to Dismiss* **(Rec. Docs. 91, 92)** shall be treated as *Motions for Partial Summary Judgment* under Federal Rule of Civil Procedure 12(d), but only for purposes of deciding whether Plaintiffs' claims under La. R.S. 40:2203.1 are prescribed.

**IT IS FURTHER ORDERED** that Defendants' *Motions for Partial Summary Judgment* **(Rec. Docs. 91, 92)** on Plaintiffs' claims under La. R.S. 40:2203.1 are **GRANTED.** Plaintiffs' claims alleged in Count I of the Second Supplemental and Amended Complaint are **DISMISSED.**

**IT IS FURTHER ORDERED** that DenteMax's *Motion to Dismiss* **(Rec. Doc. 92)** is **DENIED** as to Plaintiffs' breach of contract claim alleged in Count II of the Second Supplemental and Amended Complaint.

**IT IS FURTHER ORDERED** that Ameritas's *Motion for Partial Summary Judgment* **(Rec. Doc. 114)** is **GRANTED.** Plaintiffs' claim for unjust enrichment and request for injunctive relief against Ameritas in Count III and Count IV of the Second Supplemental and Amended Complaint are **DISMISSED.**

New Orleans, Louisiana, this 27th day of October, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE