UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK WIGHTMAN, D.D.S. ET AL. | CIVIL ACTION |
| VERSUS | NO: 19-11628 |
| AMERITAS LIFE INSURANCE CORP. AND DENTEMAX, L.L.C. | SECTION: "J"(3) |

### ORDER AND REASONS

Before the Court are a *Motion for Summary Judgment* **(Rec. Doc. 176)** filed by Defendant Ameritas Life Insurance Corp., and an opposition filed by Plaintiffs Wightman Family Dental, LLC, Mark J. Wightman, D.D.S., and Courtney W. Wightman, D.D.S. (Rec. Doc. 190), to which Ameritas replies (Rec. Doc. 205). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

After consideration by the Louisiana Supreme Court and the United States Court of Appeals for the Fifth Circuit, this dispute over dental rates returns to the district court. The underlying facts have been established over the course of the litigation.[1] Plaintiffs Mark Wightman and Courtney Wightman are dentists who own

---

[1] To the extent Plaintiffs argue against their previous position regarding the nature of DenteMax and the DenteMax Provider Service Agreements, (*compare* Rec. Doc. 86 at 3 ¶ 10 ("Putative Class Representatives agreed to join DenteMax's PPO . . . ."), *and id.* at 13 ¶ 40 ("DenteMax is a 'group purchaser' under the PPO Act, which is defined as 'an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization.'"), *with* Rec. Doc. 190-1 at 9–10 ("When Providers contracted with DenteMax, they entered into 'provider service agreements,' not preferred provider organization agreements.")), the novel argument is rejected, and Plaintiffs are

1

and operate a family dentistry, Wightman Family Dental, L.L.C. Plaintiffs entered into a preferred provider organization ("PPO") agreement[2] with DenteMax, L.L.C. Subsequently, Ameritas Life Insurance Corp. leased the DenteMax PPO network, which granted Ameritas access to DenteMax's reduced PPO reimbursement rate. Plaintiffs were not notified of this arrangement until Ameritas refused to reimburse above the reduced PPO rate and informed Plaintiffs of the PPO lease agreement. Thereafter, Plaintiffs initiated the present action against DenteMax and Ameritas for violations of Louisiana's PPO Act, which requires insurers to notify healthcare providers when reimbursing those providers at a reduced PPO rate. *See* La. Stat. Ann. § 40:2203.1.

Twice previously, this Court has issued Orders and Reasons on dispositive motions. In the first, the Court determined that dentists were healthcare providers within the meaning of the PPO Act; that, lacking contractual privity with Plaintiffs, Ameritas was not a "group purchaser" and, thus, could not be held liable under

---

judicially estopped from adopting a clearly inconsistent position, *see Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) (discussing judicial estoppel and noting the doctrine's application to both issues of law and fact).

[2] Under Louisiana law, a PPO is:

> [A] contractual agreement or agreements between a provider or providers and a group purchaser or purchasers to provide for alternative rates of payment specified in advance for a defined period of time in which:
>
> (i) The provider agrees to accept these alternative rates of payment offered by the group purchasers to their members whenever a member chooses to use its services.
>
> (ii) There is a tangible benefit to the provider in offering such alternative rates of payment to the group purchaser.

La. Stat. Ann. § 40:2202(5)(a).

Louisiana Revised Statue § 40:2203.1(G); but that Plaintiffs did state an unjust enrichment claim against Ameritas for the difference in the reduced rate paid and the standard rate expected. (Rec. Doc. 37). Neither party sought reconsideration of the order or its certification for appeal.

After the Court's ruling, Plaintiffs proceeded to convert the case into a class action in their First Supplemental and Amended Complaint. Nearly six months later, Plaintiffs filed their Second Supplemental and Amended Complaint, the operative complaint before the Court. Therein, Plaintiffs acknowledge the Court's ruling that Ameritas was not a group purchaser, but assert Ameritas "is still 'deemed to be the group purchaser for the purposes of [La. R.S. 40:2203.1],' including the penalty provision of La. R.S. 40:2203.1(G)." (Rec. Doc. 86 at 13 ¶ 42 (quoting La. Stat. Ann. § 40:2203.1(B)(4))).

The Court's second ruling followed. Considering motions to dismiss by DenteMax and Ameritas and a motion for partial summary judgment by Ameritas, the Court determined claims pursuant to the PPO Act were subject to Louisiana's one-year prescriptive period for delictual actions and, thus, Plaintiffs' claims pursuant to the PPO Act had prescribed. (Rec. Doc. 144). The Court also found Plaintiffs' unjust enrichment claim against Ameritas was prohibited because they had an alternative remedy, namely, a claim against DenteMax pursuant to the PPO Act. Plaintiffs appealed the ruling, on prescription grounds.[3] On appeal, the Fifth

---

[3] Plaintiffs debate that they abandoned non-PPO Act claims through their appeal. (Rec. Doc. 190-1 at 6 n.33 ("Ameritas contends the Providers abandoned their claims sounding in breach of contract, unjust enrichment, and injunctive relief because they did not raise those claims on appeal. This contention is false and Ameritas has not proffered any evidence in support.")). However, in their

3

Circuit received clarity on the prescription issue through the Louisiana Supreme Court's answer of a certified question. Instead of treating claims under the PPO Act as delictual, courts should find them contractual in nature and apply the ten-year prescriptive period for contracts. *See Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So. 3d 690, 696–97. Accordingly, the Fifth Circuit reversed claim dismissal on prescription grounds and remanded the case. (Rec. Doc. 171-1 at 5, n.3 (noting "parties make additional arguments" but "mak[ing] no determination as to whether they are properly before this court")).

After this Court's prescription ruling but before the filing of appeal, Plaintiffs and DenteMax settled their claims, dismissing DenteMax from the action. As the remaining defendant, Ameritas now moves for summary judgment. Plaintiffs seek the Court's denial, requesting in the alternative an opportunity to amend their Second Supplemental and Amended Complaint.

## **LEGAL STANDARD**

---

briefing on appeal, Plaintiffs only offered passing mention to other claims against Ameritas, including the unjust enrichment claim. Such mention, moreover, only argued against claim dismissal as related to prescription: "The District Court erred when it found that Wightman's separate claims for breach of contract and unjust enrichment against Ameritas were prescribed and that Wightman's did not have a legal right to pursue unjust enrichment claims against Ameritas because it 'had a remedy against DenteMax that was prescribed.'" *Wightman v. Ameritas Life Insurance Corp.*, No. 21-30148, DCN No. 28 at 78 (5th Cir. June 9, 2021). Although the alleged source of Plaintiffs' quotation is the Order and Reasons appealed from, the quotation is absent from the Court's ruling. The closest Plaintiffs get is the Court's introduction of Ameritas's unjust enrichment argument: "Ameritas argues that Plaintiffs had a remedy against DenteMax under La. R.S. 40:2203.1, which precludes Plaintiffs from bringing an unjust enrichment claim against Ameritas, despite the prescription of that claim against DenteMax." (Rec. Doc. 144 at 9). Plaintiffs mischaracterize the Court's basis for dismissal of the unjust enrichment claim and fail to brief the issue on appeal. Accordingly, any appeal of the breach of contract, unjust enrichment, and injunctive relief claims were previously resolved, abandoned by Plaintiffs, and are no longer before the Court. *See Bernstein v. Maximus Fed. Servs., Inc.*, 63 F.4th 967, 968 n.1 (5th Cir. 2023) (quoting *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983)) ("Claims not pressed on appeal are deemed abandoned.").

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the

5

burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Sitting in diversity, this Court returns to the interpretation of Louisiana law, namely, the PPO Act. The fundamental question in all cases involving statutory interpretation is legislative intent. *See City of DeQuincy v. Henry*, 2010–0070, p. 3 (La. 3/15/11), 62 So. 3d 43, 46. For that inquiry, the interpretation of any statutory provision begins with the language of the statute itself. *In re Succession of Faget*, 10-0188, p. 8 (La. 11/30/10), 53 So. 3d 414, 420 (citation omitted). The Louisiana Supreme Court dictates that "when a provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used." *Arabie v. CITGO Petroleum Corp.*, 2010-2605, p. 5 (La. 3/13/12), 89 So. 3d 307, 312–13 (citations omitted).

However, when the words of a statute are ambiguous, "their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code art. 12. When the language of the statute is susceptible of

6

different meanings, it must be interpreted as having the meaning that best conforms to its purpose. *Id.* art. 10. The legislature's actions, moreover, are considered purposeful, and not superfluous. *See Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So. 2d 184, 186 ("Laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject.").

This Court previously determined that dentists were healthcare providers within the meaning of the PPO Act, and thus, Plaintiffs could raise an action through the statute. Ameritas requests the Court reconsider that ruling, in light of the Louisiana Legislature's passage of the Network Leasing Act in 2021. Ameritas presents a compelling argument. The Network Leasing Act explicitly refers to the networking contracts for dental services, their needed transparency with grants of third-party access, and penalties for transparency failures. La. Stat. Ann. §§ 22:1171–72. Ameritas concludes the legislature thereby admitted a gap between "medical services" and "dental services," plugging the hole in dental network oversight networks through the Network Leasing Act.

In the earlier dissection of the terms "medical" and "dental," (*see* Rec. Doc. 37 at 4–14), the Court forecasted absurd consequences in leaving dental agreements outside the reach of the PPO Act. The Court specifically observed that the broadness in the PPO Act's definition of "medical services" indicated legislative intent to include dental care. *Id.* at 11 (discussing La. R.S. 22:1260.2(13)). The subsequent passage of the Network Leasing Act alone does not dictate a different reading. Indeed, the Court could imagine the co-applicability of the PPO and Network Leasing Acts to dental

7

networks. Despite their terminology differences, both could be seen to protect providers, but through different means. The PPO Act permits a provider to file a private action against a non-compliant group purchaser, seeking damages for the offense. *See* La. Stat. Ann. § 40:2203.1(G). The Network Leasing Act, on the other hand, tasks the commissioner of insurance to impose penalties on a violator. *See* La. Stat. Ann. § 22:1172(E). That difference, Plaintiffs insist, is enough to preserve the Court's previous reading. (*See* Rec. Doc. 1901 at 13–14).

However, the PPO and Network Leasing Acts' overlap of concern and lack of uniformity in terminology lead the Court to reexamine its previous conclusion of legislative intent. Even before the passage of the Network Leasing Act, this Court found the term "medical services" ambiguous in the PPO Act. (Rec. Doc. 37 at 10). Only after "utilizing . . . secondary rules of statutory interpretation," such as textual context and the legislation as a whole, did this Court conclude dental services were included within the medical services envisioned by the PPO Act. Reading the PPO and Network Leasing Acts *in pari materia*, the Court now draws the opposite conclusion.

Although the Network Leasing Act does not provide a private right of action, the legislature deemed it necessary to create legislation for fair and transparent dental network contracting. This legislative action is presumed to have been done "with deliberation and with full knowledge of all existing ones on the same subject." *Theriot*, 694 So. 2d at 186. Put another way, the passage of the Network Leasing Act leads to the presumption that dental providers lacked protection from third-party

8

access to "a provider network contract or a provider's dental services or contractual discounts pursuant to a provider network contract". La. Stat. Ann. § 22:1172.

The legislative hearings for the Network Leasing Act reinforce the presumption. Filed by Rep. Kyle Green, House Bill 387 was presented to both the Louisiana House and Senate Committees on Insurance by members of the Louisiana Dental Association. Testifying similarly to each, New Orleans Dentist Dr. Gizelle Richard recounted entering a service agreement with one network, only to discover the contracting dental network had leased the contract to other entities, creating a broader umbrella plan. *See Provides Relative to Network Leasing by Dental Insurers: Hearing on H.B. 787 Before the H. Comm. on Ins.*, 2021 Leg., 47th Reg. Sess. at 1:30:25 (La. 2021) (statement of Dr. Richard), https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2021/apr/0422_21_IN; *Provides Relative to Network Leasing by Dental Insurers: Hearing on H.B. 787 Before the S. Comm. on Ins.*, 2021 Leg., 47th Reg. Sess. at 14:40 (La. 2021) (statement of Dr. Richard), https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2021/apr/0422_21_IN. Dr. Richard came to the discovery through a call from a patient, not through notice of the group provider or a third-party entity. Without protection, the impact on Dr. Richard's practice was significant: "We had to write thousands of dollars of patient refund checks immediately." *Id.* The Network Leasing Act passed both the chambers of the Louisiana Legislature unanimously. Finally, the legislature made explicit the legislation's prospective effect: "The provisions of this Act shall apply to any contract issued or renewed after August 1, 2021." La. Stat. Ann. § 22:1172.

Thoroughly considered by the legislature, submitted by the Louisiana Dental Association, and cited as needed protection for providers like Dr. Richard, the Network Leasing Act was intended to prevent the surprise addition of third parties to a dental network contract. Reading the Network Leasing and PPO Acts *in pari materia*, the Court concludes dental services are not included within the PPO Act.[4]

In summary, Plaintiffs' remaining claims—the PPO Act claims—must be dismissed. In light of the Network Leasing Act, the DenteMax agreement could not be considered a preferred provider organization agreement, nor Ameritas deemed a group purchaser under the PPO Act. The signed agreements by Plaintiffs Mark Wightman and Courtney Wightman permitted DenteMax to lease the network plan (Rec. Docs. 176-5 and 176-6). DenteMax did so, in conformity with the contractual

---

[4] The Court's conclusion is also bolstered by the Louisiana Supreme Court's reference to the Network Leasing Act in its answer to the Fifth Circuit's certified prescription question. Naming as one of several "[p]rerequisite factual determinations", the state high court stated, without resolving, "whether the contract between the plaintiffs and DenteMax is a 'preferred provider organization agreement,' as defined by La. R.S. 40:2202(5)(a), which did not prohibit 'lease' by DenteMax to Ameritas." *Wightman*, 351 So. 3d at 694. As potentially applicable to that inquiry, the Louisiana Supreme Court cited the Network Leasing Act:

> We note the recent passage of the Network Leasing Act (enacted by 2021 La. Acts, No. 26, effective August 1, 2021), consisting of La. R.S. 22:1171 and La. R.S. 22:1172, which expressly governs "dental services" ("services for the diagnosis, prevention, treatment, or cure of a dental condition, illness, injury, or disease" and which "does not include services delivered by a provider that are billed as ***medical*** expenses per the terms of a health insurance plan") and "dental benefit plans" ("a benefit plan which pays or provides dental expense benefits for covered dental services and is delivered or issued for delivery by or through a dental carrier on a stand-alone basis"). (Emphasis added.) The Network Leasing Act provides, inter alia: "A contracting entity may grant a third party access to a provider network contract or a provider's dental services or contractual discounts pursuant to a provider network contract if . . . [t]he contract specifically states that the contracting entity may enter into an agreement with a third party allowing the third party to obtain the contracting entity's rights and responsibilities as if the third party is the contracting entity . . . ."

*Id.* at 694 n.6 (emphasis in original).

agreement, providing access to Ameritas. As parties have stipulated these actions to predate passage of the Network Leasing Act, Plaintiffs have no claim against Ameritas. Thus, Plaintiffs' request to amend their complaint for a fourth time would be an exercise in futility.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Ameritas's *Motion for Summary Judgment* **(Rec. Doc. 176)** is **GRANTED**.

New Orleans, Louisiana, this 13th day of November, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE